**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LOUISA ELIZABETH PULLEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-01159-O-BP** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Louisa Pulley seeks judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Act ("SSA"). After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this action **with prejudice**.

**I.     STATEMENT OF THE CASE**

Pulley seeks disability benefits under Title XVI of the SSA. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 12-1 at Tr. 162-72. She applied for supplemental security income ("SSI") on February 9, 2019. *Id.* Her application reported disability due to mood disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), and executive function disorder. *Id.* at 187. The Commissioner denied Pulley's application initially and upon reconsideration (*id.* at 66, 78), so she requested a hearing before an administrative law judge ("ALJ"). *Id.* at 93. The ALJ conducted the hearing and affirmed the Commissioner's decision. *Id.* at 10-22.

After the Social Security Appeals Council denied further administrative review (*id.* at 1), Pulley filed this action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). She raises a panoply of issues, challenging: (1) whether the ALJ applied correct legal standards when determining her impairments do not qualify as presumptively disabling at step three of the Commissioner's evaluation; (2) whether substantial evidence supports the ALJ's conclusions regarding state agency medical consultant ("SAMC") opinions; (3) whether substantial evidence supports the ALJ's conclusions regarding her treating physicians' opinions; and (4) whether the ALJ applied correct legal standards when considering vocational expert ("VE") testimony at the hearing. *See* ECF No. 14 at 2-3.

## II.    STANDARD OF REVIEW

Title XVI of the SSA governs the SSI benefits program. 42 U.S.C. §§ 1381-1383f. A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory

2

list. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a

preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.    ANALYSIS

The ALJ conducted the sequential evaluation. At step one, he found Pulley had not engaged in substantial gainful activity since her application date of February 9, 2019. Tr. 12. At step two, he determined Pulley "has the following severe impairments: major depressive disorder, [PTSD], generalized anxiety disorder, social anxiety, executive function disorder, bipolar disorder, and degenerative disc disease status post laminectomy." *Id.* At step three, he determined Pulley's impairments do not meet those listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* Before proceeding to step four, the ALJ assessed Pulley's RFC:

> After careful consideration of the entire record, I find the claimant has the [RFC] to perform light work as defined in 20 C[.]F[.]R[.] [§] 416.967(b) except she can understand, remember, and carry out simple instructions; she is precluded from performing any fast paced or production rate pace work; she is limited to occasional interaction with coworkers and supervisors; and can have no interaction with the public.

*Id.* at 15. At step four, the ALJ found Pulley has no PRW. *Id.* at 20. However, based on her RFC, the ALJ determined "jobs [] exist in significant numbers in the national economy that the claimant can perform." *Id.* at 21. By way of example, the ALJ found Pulley could work as an office helper,

mail clerk, or laundry sorter. *Id.* Because Pulley can perform those and other jobs that exist in significant numbers nationwide, the ALJ found Pulley not disabled at step five. *Id.*

Pulley asserts numerous errors mar the ALJ's evaluation. In particular, she claims the ALJ departed from applicable legal standards or reached a decision unsupported by substantial evidence at four different junctures. First, she argues the ALJ erred by "fail[ing] to consider whether each of [Pulley's] severe impairments satisfy the [] Commissioner's requirements for presumptive disability." ECF No. 14 at 7 (cleaned up). Second, she argues "[t]he ALJ misread the opinions of the [SAMCs] with regard to the degree of limitation in [her] ability to adapt or manage herself in a work setting." *Id.* at 11. Third, she argues "[t]he ALJ erred in giving less weight to [her treating physicians'] opinions and greater weight to the opinions of the non-examining and non-treating [SAMCs], who merely reviewed the record." *Id.* at 17. Fourth, she argues the ALJ "failed to establish the existence of alternative work, in significant numbers, which [Pulley] can perform." *Id.* (cleaned up). None of her arguments persuade.

### A.    The ALJ's omission of Listing 12.15 at step three was harmless legal error, and substantial evidence supports the conclusion reached.

The Commissioner's decision denying benefits "shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1). No formalistic rules govern how ALJs must articulate a decision, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994), so long as they provide enough reasons to permit meaningful judicial review. *Kinney v. Astrue*, No. 5:09-cv-00008-C-BG, 2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009) (citation omitted), *rec. adopted*, 2009 WL 2981907, at *1 (N.D. Tex. Sept. 17, 2009). In reaching an unfavorable decision at step three, the ALJ should identify impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 that are relevant to the claimant's symptoms and explain why

the symptoms fail to qualify under those listings. *Audler*, 501 F.3d at 448. Pulley says the ALJ failed to do that, arguing "the ALJ found that [PTSD] is a severe impairment but [] failed to consider whether the severity of this impairment satisfied the requirements . . . in Section 12.15 of Appendix 1." ECF No. 14 at 8. She is correct.

The question is not whether the ALJ erred (he did), but whether that error prejudiced Pulley (it did not). To answer this question, the Court must assess whether substantial evidence supports the ALJ's conclusion, his procedural misstep notwithstanding. *Audler*, 501 F.3d at 448. The step-three burden is Pulley's, not the Commissioner's. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *see also Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). To show her impairments matched or medically equaled a listed condition, Pulley had to "provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citation omitted). "An impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Id.* Pulley failed to make that showing for her PTSD and Listing 12.15.

To be sure, the ALJ erred by failing to address Listing 12.15 (trauma- and stressor- related disorders). *Audler*, 501 F.3d at 448. But that error is harmless considering Pulley did not carry her burden for the pertinent listed conditions. The ALJ considered the entire evidentiary record and compared Pulley's conditions to Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). Tr. 13-15. His only failure concerned Listing 12.15, which requires a showing of either subparts (A) and (B), or (A) and (C):

(A) Medical documentation of *all* of the following:
1. Exposure to actual or threatened death, serious injury, or violence;
2. Subsequent involuntary re-experiencing of the traumatic event [];
3. Avoidance of external reminders of the event;
4. Disturbance in mood and behavior; and
5. Increases in arousal and reactivity [];

AND

> (B) Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.

OR

> (C) Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; *and*
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.15.

Pulley insists "had the ALJ properly considered [her PTSD], the ALJ may have found that [her] impairment satisfies the requirements for presumptive disability." ECF No. 14 at 9. But she relies exclusively on reports from Drs. Lusk and Walters, which the ALJ found largely unpersuasive, ignoring the record's substantial corpus of countervailing evidence. *See id.* at 8-10. Considering the entire evidentiary record and assessing Listings 12.04 and 12.06, which contain parallels to 12.15's subparts (B) and (C), the ALJ found no evidence Pulley satisfied her burden for those conditions. Tr. 12-15.

For subpart (B)'s corollaries, the ALJ noted Pulley's ability to "understand, remember, and apply information" was not as limited as she suggested. Pulley can "pay bills, count change, and use a checkbook," and the ALJ saw no evidence her conditions interfered with practical exigencies of daily life. *Id.* at 13. For socialization, he noted she maintains hobbies and "socializes with others by playing Dungeons & Dragons and hiking at least once per day." *Id.* Beyond that, "she regularly

[goes] to the Dog Park, hiking trail, pet store, and Walmart during non-peak hours" and "denie[s] any problems getting along with family, friends, or neighbors." *Id.* at 14. For "concentrating, persisting, or maintaining pace," the ALJ noted moderate limitations, but observed "good concentration and attention" in Pulley's exam scores (Ex. 9F/2-10) and positive reports of concentration in Pulley's hearing testimony. *Id.* Despite the extreme limitations indicated in her physicians' reports and hearing testimony, Pulley's cognition exam showed thought processing that was "coherent and goal directed with no evidence of abnormal or delusional thoughts," *id.* (citing Ex. 9F/2-10), leading the ALJ to doubt the reliability of her physicians' contrary reports. The ALJ similarly assigned mild limitation for Pulley's ability to "adapt and manage" herself, noting from Pulley's testimony that she can "maintain personal care including dressing, bathing and grooming" and can "prepare meals, complete chores daily, and go outside at least once per day." *Id.* He also looked to Pulley's cognition exam, which indicated "her insight and judgment [are] excellent." *Id.*

After reviewing the entire evidentiary record, the ALJ determined Pulley's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation" and thus concluded "the 'Paragraph B' criteria are not satisfied." *Id.* He reached the same conclusion for subpart (C)'s corollaries in 12.04 and 12.06. After considering the record and Pulley's testimony at the hearing, the ALJ concluded "the evidence fails to establish" subpart (C)'s criteria. *Id.* Subpart (C) requires proof of *both* prongs and is not satisfied absent evidence of either one. When analyzing the second prong, the ALJ saw "no evidence to show that the claimant would be unable to adapt to minimal increases in mental demands or a change in environment." *Id.* Accordingly, Pulley failed to carry her burden for parallels to both subpart (B) and subpart (C).

The Court will not overturn an ALJ's decision if "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). That analysis is straightforward here: given (A) Listings 12.04 and 12.06 have parallel requirements to Listing 12.15; and (B) the ALJ considered Listings 12.04 and 12.06 and found Pulley did not carry her burden; it must be true that (C) Pulley would not carry her burden for Listing 12.15, even if the ALJ considered it. In the Fifth Circuit, harmless error exists when "it is inconceivable that the ALJ would have reached a different conclusion" had an alleged error never occurred. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Because that is the case here, the Court should affirm the Commissioner's decision. *Id.*; *see Mays*, 837 F.2d at 1364.

### B.    The ALJ applied correct legal standards when considering the SAMCs' opinions and reached a conclusion substantial evidence supports.

Next Pulley argues the ALJ erred when interpreting the SAMCs' administrative findings. She notes the SAMCs found she "had a moderate limitation in her ability to adapt or manage herself in a work setting." ECF No. 14 at 11 (citing Tr. 61, 73). She says the ALJ "incorrectly concluded that it was the opinion of the [SAMCs] that [] Pulley had *mild* limitations in adapting or managing herself." *Id.* But the Commissioner need not "defer or give any specific evidentiary weight, including controlling weight" to SAMC opinions. 20 C.F.R. § 416.920c(a). ALJs have one hard and fast requirement: "fully and fairly develop the facts" and explain their analysis accordingly. *Ripley*, 67 F.3d at 557 (citation omitted). Even then, "[a]n ALJ's failure to fulfill this duty is not reversible error unless the claimant is prejudiced." *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (discussing *Ripley*, 67 F.3d at 557). In fulfilling this obligation, the ALJ "is not required to expressly discuss each finding by a[] SAMC or discuss each factor listed in 20 C.F.R. § 404.1527c." *Escalante v. Colvin*, No. 3:14-cv-0641-G-BH, 2015 WL 1443000, at *9

(N.D. Tex. Mar. 31, 2015) (discussing *Newton*, 209 F.3d at 456-58). The ALJ's four-paragraph explanation here suffices. *See* Tr. 19 (assessing the SAMC opinions of record).

Pulley says the ALJ "found the [SAMC] opinions to be persuasive but erred in his recitation of the medical opinions." *Id.* But ALJs do not have to assign specific weight to SAMC opinions, 20 C.F.R. § 416.920c(a), formally recite limitations from SAMC opinions, *Jess W. v. Saul*, No. 1:18-cv-00173-BU, 2020 WL 6877701, at *13 (N.D. Tex. Nov. 3, 2020), *rec. adopted*, 2020 WL 6873488, at *1 (N.D. Tex. Nov. 23, 2020), or incorporate all limitations from a persuasive SAMC opinion in their RFC. *See Ewing v. Colvin*, No. 4:13-cv-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Muse*, 925 F.2d at 790). Indeed, ALJs are never "required to incorporate limitations in the RFC that [they] did not find to be supported in the record." *Id.* Evidentiary assessments are not zero-sum games, and SAMC opinions do not come in a "take it or leave it" format. Thus, the ALJ did not err in finding the SAMC opinions generally "persuasive," but articulating marginally different specific limitations in his RFC. *Id.*

Pulley's reply brief incorrectly represented that the Commissioner "acknowledges that the ALJ misinterpreted the [SAMCs'] opinions . . . as to the severity of [Pulley's] limitation in her ability to adapt or manage herself in a work setting. But the [] Commissioner then ignores this error, claiming that it is the ALJ's responsibility to weigh the evidence and . . . decide the case." ECF No. 16 at 4. But the Commissioner did not acknowledge that fact and instead directly refuted the point:

> Plaintiff fails to show that the ALJ improperly evaluated the prior administrative findings of [the SAMCs] when he did not explicitly and in greater detail explain how he considered . . . their prior findings of "moderate limitations" in "adapt or manage oneself." Pl.'s Br. at 11-1 (citing Tr. 61, 73). No such requirement exists: again, while ALJs must consider prior administrative findings, they are not obligated to adopt them. 20 C.F.R. § 416.913a(b)(1). The ALJ found these opinions "persuasive" but found that Plaintiff required *additional* mental limitations beyond those that they ultimately found.

ECF No. 15 at 12-13. Contrary to Pulley's suggestion, the Commissioner never acknowledged the ALJ "misinterpreted the [SAMCs'] opinions" regarding her ability to adapt or manage herself. Rather, the Commissioner noted the ALJ was not required to incorporate all limitations from the SAMCs' prior administrative findings just because he found them persuasive. *See id.*

But the Commissioner went further, rightly showing that the ALJ's RFC paralleled the SAMCs' ultimate assessment of Pulley's mental residual functional capacity ("MRFC"). Pulley's reliance on labels notwithstanding, the SAMCs' MRFC, and the ALJ's resulting RFC, go beyond the limitations in the SAMCs' initial report. The SAMCs stated Pulley can "understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting." Tr. 77. The ALJ did not err in relying on the MRFC rather than particularized wording Pulley emphasizes from the administrative report. *Skiles v. Colvin*, No. 4:12-cv-418-Y, 2013 WL 3486921, at *8 (N.D. Tex. July 11, 2013). The ALJ incorporated the MRFC's limitations, as the Commissioner observes:

> Plaintiff claims the ALJ ignored the SAMCs' prior administrative findings regarding adapting limitations, but the ultimate MRFC from the consultants as well as the ALJ's own more restrictive RFC findings clearly note that Plaintiff would thereby be limited to simple work (*i.e.*, more restrictive than the SAMCs' findings of able to 'understand, remember and carry out detailed but not complex instructions"), could have only 'occasional' interaction with the public, coworkers, and supervisors, and with only 'occasional changes in the work setting' (Tr. 15, 77). Plaintiff's argument logically fails when considering the SAMCs' annunciated mental RFC and the ALJ's ultimate RFC determination, which show the SAMCs (and thus the ALJ) provided a final mental RFC that took into account their findings, and that the ALJ used nearly identical language along with including additional limitations in his ultimate RFC determination. The SAMCs' less restrictive mental RFC assessments provide substantial support for the ALJ's RFC findings. Plaintiff's claim that the ALJ 'rejected' these opinions and her claim of error with respect to the SAMCs' final administrative decision simply cannot stand.

ECF No. 15 at 13-14. Ignoring formalistic labels and juxtaposing the ALJ's RFC and the SAMC's MRFC, the undersigned sees clear congruence between the two. Given the ALJ properly accounted for the SAMCs' MRFC and fully explained his findings, the Court must affirm. *See Leggett*, 67 F.3d at 564 (noting the ALJ's determination is "granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the [ALJ's] decision or finds that the [ALJ] made an error of law").

### C.    The ALJ applied correct legal standards in evaluating evidence from Pulley's treating physicians and reached a conclusion substantial evidence supports.

Next Pulley takes issue with the ALJ's handling of opinion evidence[1] from her treating psychiatrist, Dr. Lusk, and treating psychologist, Dr. Walters. ECF No. 14 at 13-17. She stresses their opinions were informed "by years of clinical evaluation and treatment, and psychometric testing," but omits references to specific treatment evidence in the record. *See id.* at 17. Regardless, the Court "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner." *Harris*, 209 F.3d at 417 (citing *Ripley*, 67 F.3d at 555). To the extent Pulley invites the Court to do so, it must decline. Thus, the Court need not analyze the relative persuasive merit of Lusk's and Walters's opinions, but need only ask if the ALJ applied correct legal standards when evaluating those opinions and reached a conclusion substantial evidence supports. The answer is affirmative for both.

### 1.    The ALJ did not err in assigning less evidentiary weight to Lusk's and Walters's opinion.

Pulley finds legal error in the ALJ's discrediting of certain components within Lusk's and Walters's reports, as well as his finding them less persuasive than the SAMCs' opinions. ECF No.

---

[1] As discussed below, Dr. Walters submitted an opinion letter not reviewable under the Commissioner's guidelines as a formal "medical opinion." *See* 20 C.F.R. § 416.913(a)(2). This analysis uses "opinion" colloquially, rather than as a formal evidentiary definition.

14 at 15-17. But while "opinions from treating physicians are generally entitled to significant weight," *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (citation omitted), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a); *see Greenspan*, 38 F.3d at 237 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)) ("The treating physician's opinions, however, are far from conclusive[, as] 'the ALJ has the sole responsibility for determining the claimant's disability status.'").

What Pulley calls the ALJ "substituting his own medical opinion" for Lusk's and Walters's was actually the ALJ properly assessing those opinions considering the entire evidentiary record. For instance, Pulley asserts "[i]n rejecting the opinion of Dr. Lusk as inconsistent with mental status examinations, the ALJ is substituting his own medical opinion for the opinion of the treating psychiatrist." ECF No. 14 at 15. But the Commissioner's regulations *require* ALJs to explain an opinion's consistency with the evidentiary record when rejecting it. 20 C.F.R. § 416.920c(b)(2); *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980). Far from "substituting his own medical opinion," the ALJ was laying the foundation for meaningful judicial review of his assessment. *See id.* While Pulley correctly notes "[t]he ALJ is not a mental health professional and is not qualified to determine . . . [the] appropriate treatment for [a] person," *see* ECF No. 14 at 15, the ALJ's findings do not indicate he attempted to do so.

The question is not *if* but *how* an ALJ can discredit treating physician opinions considering the rest of the evidentiary record. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."). ALJs must "articulate . . . how persuasive [they] find all of the

medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 416.920c(b). This explanation must discuss supportability and consistency. *Id.* § 416.920c(b)(2). As discussed in further detail below, the ALJ explained those factors for Lusk's and Walters's opinions. *See* Tr. at 19-20. He thus did not err in assigning them less persuasive value, despite Pulley's insistence otherwise.

### 2.    Substantial evidence supports the ALJ's conclusions regarding Lusk's and Walters's opinions.

The parties do not dispute that treating physicians' opinions merit careful consideration. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) ("Ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."). But a medical opinion's source does not qualify it as per se determinative. *Greenspan*, 38 F.3d at 237 (citing *Moore*, 919 F.2d at 905). As the Fifth Circuit has stressed: "The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown." *Newton*, 209 F.3d at 455. Therefore, the Administration's internal regulations require an explanation when the ALJ rejects such evidence. 20 C.F.R. § 416.920c(b). To this end, the Fifth Circuit has rejected brightline "good cause" tests and essentially defines "good cause" as "you know it when you see it." *See, e.g.*, *Newton*, 209 F.3d at 455-56 ("Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."). Here, the ALJ's explanation satisfies that showing.

The ALJ did not have to meet affirmative explanatory requirements to reject Dr. Walters's report. The ALJ noted Dr. Walters opined on Pulley's psychological conditions, but did not submit a formal medical opinion in vocational terms or otherwise explain how Pulley's conditions would

impact her ability to work. Tr. 19. Not every correspondence communicating a physician's "opinion" constitutes a formal medical opinion any more than every attorney's correspondence constitutes a formal legal opinion. This is true even if the physician's correspondence contains significant information regarding a claimant's diagnoses and prognoses. 20 C.F.R. § 416.913(a)(2)-(3). Considering Dr. Walters's report was "not related to the claimant's ability to work or set forth in vocational terms," it was not a "medical opinion" under the Commissioner's regulations, and the ALJ did not err in considering it only "in terms of understanding the claimant's symptoms over time." Tr. 19. *See* 20 C.F.R. § 404.1513(a)(2)(i)-(iv) (defining "medical opinion" as a medical source's statement as to how a claimant's conditions would impair certain enumerated work capabilities).

As for Dr. Lusk's opinion, the ALJ's explanation suffices. Dr. Lusk opined that Pulley's psychiatric conditions would severely hinder her ability to work and would prove exceedingly limiting if she attempted to enter the workforce. Tr. 336; 698-703. On a boilerplate examination form, almost all of Dr. Lusk's responses indicated Pulley would be "unable to meet competitive standards" or went further by stating Pulley has "no useful ability to function." *Id.* at 701-02. The ALJ was unpersuaded, noting:

> The extreme limits in nearly every area are not consistent with other evidence, including unremarkable mental status examinations from [Pulley's] newer treatment provider in Ex. 9F, [Pulley's] own reported activities of daily living such as driving, attending physical therapy regularly, shopping in stores regularly, and completing interstate travel. (Hearing testimony; Ex. 3F/5). Moreover, there is no mention of disabling mental issues in other records such as her recent orthopedic visits in Ex. 11F. Finally, the extreme limitations assessed by Dr. Lusk are also not consistent with generally routine and conservative treatment[,] with the claimant only taking two psychotropic medications currently.

*Id.* at 20. That explanation satisfies the minimal required discussion of an opinion's "supportability" and "consistency." *See* 20 C.F.R. § 416.920c(b)(2).

In concluding, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," *Bradley*, 809 F.2d at 1057, and the Court "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner." *Harris*, 209 F.3d at 417 (citing *Ripley*, 67 F.3d at 555). The Fifth Circuit has held that "the ALJ can decrease reliance on treating physician testimony for good cause" and has routinely found good cause when an opinion contradicts "objective medical evidence and [the claimant's] own testimony." *Leggett*, 67 F.3d at 566; *see also Greenspan*, 38 F.3d at 237. Here, Dr. Lusk's opinion contained extreme limitations that strained the ALJ's credulity. Tr. at 19-20. Because the ALJ clearly explained why, the Court may not second guess him.

### D. The ALJ applied correct legal standards when considering VE testimony at Pulley's hearing.

Pulley's final argument concerns VE testimony from her hearing. *See* ECF No. 14 at 17-24. Specifically, Pulley criticizes a hypothetical question the ALJ posed to the VE at step five:

> I'd like you to assume an individual of the claimant's age and education with no past relevant work. Further assume the individual is limited to work at the light exertional level; limited to understanding, remembering, and carrying out simple tasks and instructions; is precluded from performing any fast-paced or production-rate-pace-type work; limited to occasional interaction with co-workers and supervisors; and precluded from interaction with the general public. Could that hypothetical individual perform any work in the national economy and, if so, could you give me a few examples?

Tr. 52. The VE testified such an individual could perform a wide array of jobs within the national economy, listing office helper (100,000 jobs), mail clerk (56,000 jobs), and laundry sorter (23,000 jobs) as examples. *Id.*; *see generally* U.S. Dep't of Lab., Dictionary of Occupational Titles, §§ 239.567-010 (office helper); 209.687-026 (mail clerk); 361.687-014 (laundry sorter).

Pulley argues an incongruence between the ALJ's instruction and the VE's testimony warrants remand. Citing *Martin v. Saul*, No. 5-19-cv-00573-FB-RBF, 2020 WL 4382133, at *1

(W.D. Tex. July 30, 2020), she contends her case should be remanded because two of the three jobs in the VE's testimony—"mail clerk" and "officer helper"—require work capacity beyond her abilities. ECF No. 14 at 18-22. The Court need not address Pulley's "office helper" arguments because they are predicated on "moderate" limitations to control herself (which Pulley contends are proper), not "mild" limitations to control herself (which the ALJ found). Because that argument is based on a finding the ALJ never made, it defeats itself and need not be addressed.

Pulley's second argument concerns the VE's inclusion of "mail clerk" in jobs she could hypothetically perform. Pulley notes the ALJ limited his hypothetical to jobs involving "simple tasks and instructions," *see* Tr. at 52, while mail clerk positions necessitate "level three" reasoning under the *Dictionary of Occupational Titles* ("DOT"). ECF No. 14 at 17-19. Promulgated by the Department of Labor, the DOT "was developed in response to the demand of an expanding public employment service for standardized occupational information to support job placement activities." U.S. Dep't of Lab., Dictionary of Occupational Titles, 1991 WL 645964 (4th ed.), *Introduction*. It has since become a mainstay of the Commissioner's disability determinations. *See Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). Relevant here, the DOT ascribes a reasoning level ("RL") to every job listed—an estimation of the general mental and psychological capabilities individuals need to perform that job, ranked from a low of RL 1 to a high of RL 6. U.S. Dep't of Lab., Dictionary of Occupational Titles, App. C, 1991 WL 688702. Because RLs are generalized estimations, the differences between them are often nuanced. For instance, claimants with an RL 3 can "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," while claimants with an RL 2 can handle "detailed but uninvolved written or oral instructions." *Id.*

Because the DOT assigns an RL 3 to mail clerk positions, Pulley contends the VE's answer was irreconcilably incompatible with the ALJ's question. ECF Nos. 14 at 17-19; 16 at 4-5. Since the ALJ relied on "mail clerk" positions when determining Pulley could perform a significant number of jobs available in the national economy, Pulley believes his "not disabled" conclusion is unjustified. *Id.* at 17-18. The Commissioner disagrees, arguing "case law does not unequivocally find an inherent conflict between RL 3 work and an RFC that includes a limitation to only simple work." *See* ECF No. 15 at 18 (collecting cases). This is certainly accurate, as courts have struggled to determine where the lines should fall between such nuanced RL differences. *See Johnson v. Astrue*, No. 11-3030, 2012 WL 5472418, at *11 (E.D. La. Oct. 5, 2012) (collecting cases showing a limitation to "simple, repetitive and routine tasks" was not inapposite for positions with an assessed RL 3).

While a limitation to "simple instructions" clearly contemplates RL 2 ("detailed but uninvolved written or oral instructions"), it is not entirely clear whether such a limitation precludes RL 3 ("apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form"). *See id.* Given the unclear liminal space between RL 2 and RL 3, such disputes defy simple resolution. The Fifth Circuit has not resolved the matter, and the Court does not have to here, as Pulley's contention, at best, undermines a third of the VE's referenced jobs. *Johnson v. Commissioner of Soc. Sec. Admin.*, No. 3:11-cv-3126-L (BF), 2013 WL 632104, at *14 (N.D. Tex. Feb. 4, 2013), *rec. adopted*, 2013 WL 628561, at *1 (N.D. Tex. Feb. 20, 2013) ("Although the Court finds that a potential conflict does exist between the [job] and the DOT's listed reasoning level, the Court need not address this conflict, as the other two occupations presented do not conflict with the DOT and have a significant number of available positions.").

The Commissioner's step five burden would have been satisfied had the VE identified a single job significantly available within the national economy that Pulley can perform, much more so with two. *Pitts v. Saul*, No. 3:19-cv-1539-BH, 2020 WL 6566412, at *7 (N.D. Tex. Nov. 9, 2020) (collecting cases); *Duncan v. Saul*, No. 3:19-cv-1333-S-BH, 2020 WL 6120472, at *15 & n.12 (N.D. Tex. Sept. 10, 2020) (collecting cases), *rec. adopted*, 2020 WL 6064359, at *1 (N.D. Tex. Oct. 14, 2020); *Gaspard v. Soc. Sec. Admin. Comm.*, 609 F. Supp. 607, 617 (E.D. Tex. Apr. 8, 2009) (citation omitted) (declining to reverse in a factually indistinguishable case because "[t]he Commissioner's burden at Step 5 . . . is satisfied by showing the existence of only *one* job with a significant number of available positions that the claimant can perform"). The inquiry is not whether a hypothetical job conflicts with the claimant's RL capacity, but whether the VE's hypothetical positions, taken as a whole, indicate jobs are "available in significant numbers within the national economy." *Smith v. Chater*, 962 F. Supp. 980, 983-84 (N.D. Tex. Apr. 15, 1997); *Byrd v. Astrue*, 2008 WL 4414581, at *17-18 (N.D. Tex. Sept. 30, 2008). Here, even if work as a "mail clerk" was off the table, roughly 123,000 jobs exist nationwide for office helpers and laundry sorters. Tr. 21. This is why Pulley's reliance on *Martin* is misguided: the VE's testimony here conflicts with the DOT for *one* job, while *Martin* involved a conflict for "all of the jobs identified in response by the [VE] as being available to [the claimant]." 2020 WL 4382133, at *4.

While Pulley emphasizes the RL 3 requirements for mail clerk positions, *see* ECF No. 14 at 18-19, that emphasis can only take her argument so far. As noted above, the DOT provides standardized probabilistic analyses of certain jobs' requirements. VE testimony, on the other hand, is claimant-specific. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995); *see also Fields*, 805 F.2d at 1170 (noting VEs are "able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the

claimant can perform the specific job"). Thus, the Fifth Circuit has clarified that ALJs should rely on the VE's assessment of a claimant's ability to work a job, not the putatively conflicting DOT guidelines for that job. *Carey*, 230 F.3d at 147 (affirming a non-disabled finding despite claimant's arguments "that the [VE's] testimony . . . is incredible in light of or inconsistent with the skill requirements listed for those jobs in the DOT"). Thus, even if the ALJ limited consideration to "simple" jobs and most mail clerks require RL 3 capabilities, the VE's answer controls "provided that the record reflects an adequate basis" for the ALJ's reliance. *Id.* at 146. Because the ALJ explained that adequate basis here, *see* Tr. 19-21, his decision does not warrant judicial reconsideration.

Substantial evidence supports an ALJ's conclusion if a VE identifies a single type of job significantly available within the national economy for a particular claimant. *Pitts*, 2020 WL 6566412, at *7; *Duncan*, 2020 WL 6120472, at *15 & n.12. Because Pulley's challenge applies to one of three jobs the VE referenced, the analysis may stop there. *Johnson*, 2013 WL 632104, at *14; *see also Smith*, 962 F. Supp. at 984; *Gaspard*, 609 F. Supp. at 617; *Martin*, 2020 WL 4382133, at *4. But even for the ostensibly conflicted mail clerk position, substantial evidence supports the VE's testimony as reflected in the ALJ's conclusion. *See* Tr. 19-21. Again applying *Martin*, "[t]he better approach is to dispense with unthinking reliance on formalistic labels and instead focus in more difficult cases on whether the record reflects substantial evidence to support the ALJ's conclusions notwithstanding any conflict(s) in the record." 2020 WL 4382133, at *4 (citing *Carey*, 230 F.3d at 146).

The record here shows Pulley likely could work as a mail clerk and assuredly could work as an office helper or laundry sorter. Because she cannot plausibly argue she was prejudiced by the RL discrepancy, the minor incongruence represents harmless error and does not warrant

remand. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) ("Even if the [VE's] answer to the hypotheticals included jobs inconsistent with the conclusions of the [Commissioner], the answer . . . nonetheless provided the ALJ with evidence substantial enough to support a determination that employment was available to [the claimant]."); *Washington v. Astrue*, No. 4:07-cv-770-Y, 2009 WL 536104, at *4 (N.D. Tex. Mar. 3, 2009) (observing that, notwithstanding a conflict between the VE's testimony and the DOT, "[t]he [VE's] testimony constitutes substantial evidence that . . . satisfies the Commissioner's burden at Step Five," meaning the alleged conflict "did not result in prejudice to [the claimant's] substantial rights"); *see generally Mays*, 837 F.2d at 1364 ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").

## IV.    CONCLUSION

The ALJ applied correct legal standards and reached a decision substantial evidence supports. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and

legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on May 13, 2022.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE